SARTAIN, Judge.
This is a suit for declaratory judgment on a contract involving the interpretation of an agreement entered into between the parties hereto relative to the sale of, and payment for, an insurance agency.
On February 28, 1969, the plaintiff, Malcolm J. Dugas, entered into a written con *712 tract with the Sternfels Insurance Agency, Inc., represented by its President, Ronnie J. Sternfels, for the purchase by Sternfels of the Dugas Insurance Agency located in Donaldsonville, Louisiana. The agreement provided for a purchase price of $4,250.00, $3,000.00 of which was paid by Sternfels in cash, the balance to be paid August 31, 1969.
The document also contained, among other conditions, the following provisions pertinent to this controversy:
“It is hereby agreed and understood that Malcolm Dugas shall be the General Manager and resident agent of Roy Sternfels Insurance Agency, Inc. at its Donaldsonville office. That in consideration of the above, the said Malcolm Du-gas shall be entitled to one-half ip/2) of all gross commissions earned and developed through the Donaldsonville office of Roy Sternfels Insurance Agency, Inc. The said Roy Sternfels Insurance Agency, Inc. agrees to provide an office in Donaldsonville and to pay the rent, all office utilities and the salary of one employee.
“It is understood and agreed that this agreement can be terminated by either party to this instrument upon the giving of ninety (90) days written notice. In the event of termination by either party, the Roy Sternfels Insurance Agency, Inc. agrees to pay the said Malcolm Du-gas, or his survivors, a sum representing one and one-half (1.1,4) times the previous year commissioners earned.”
It is agreed that the word “commissioners” in the second quoted paragraph above is a typographical error and should have been the word “commissions”.
On October 31, 1971, Dugas gave the required written ninety day termination notice to the defendant. This suit was filed on December 17, 1971, it apparently having been known by the parties for some time prior to that date that a disagreement which they could not reconcile existed as to the meaning of the particular provision “In the event of termination by either party, the Roy Sternfels Insurance Agency, Inc. agrees to pay the said Malcolm Dugas, or his survivors, a sum representing one and one-half (U/) times the previous year commissioners earned.”
It is the contention of the plaintiff that the parties intended that, upon termination, he was to be paid one and one-half times the agency’s gross commissions for the previous year. The defendant maintains, however, that the clause means that they were to pay to plaintiff one and one-half times the commissions actually paid him in 1971, or one and one-half times one-half of the gross commissions.
Subsequent to trial on the merits, judgment was rendered in favor of the plaintiff in the amount of $16,356.09. In his written reasons for judgment, the trial, judge thoroughly explained that this figure represented one and one-half times the commissions attributable to or produced by Dugas in 1971, this conclusion being distinguished from either interpretation advanced by the parties.
The basis for that decision was the testimony of a defense witness, Stanford H. Rosenthal, an expert in the insurance profession and, particularly, in the field of insurance agency evaluations.
In the opinion of this witness, which was the only expert testimony offered at the trial, the proper interpretation to be placed on the clause “one and one-half times the previous year commissions earned” was that this should be held to mean one and one-half times the commissions actually produced by Dugas in 1971.
That opinion is expressed on page 100 of the transcript in the following manner:
“Q. Give us your opinion, if you can, Mr. Rosenthal, as to the termination clause at the end of this agreement — 90 days hence. What would you consider the usage accepted in the trade? It would be I/2 times *713 commissions earned. Would you have an opinion as to that. mean-, ing?
“A. I personally would feel that .the U/2 times commissions earned would be on the business produced by Mr. Dugas in his position as agent and vice-president of the Sternfels Branch in Donaldsonville, Louisiana, but that would only appertain to the business that he personally produced. ...
“Q. What you’re saying is that Mr. Du-gas would be paid I1/2 times the commission which he produced. Is that correct?
“A. His own business, and any business that he went out and produced on his own by utilizing the Sternfels facility.”
And further, on page 106 of the transcript:
“Q. Getting back to this agreement— now, it’s your opinion that Mr. Du-gas should be paid according to this agreement, a sum equal to 1$4 times the amount of business which he individually developed. Is that your testimony?
“A. Produced was the word ,1 used. Yes, sir.”
Subsequent to the testimony of this expert, it appears from the record and from the trial judge’s written reasons for judgment that off the record negotiations took place in an effort to settle the matter along the lines of the interpretation given by Ro-senthal and, as stated in the court’s written reasons, “the parties in effect so agreed” to this course of action.
Based upon the information supplied him by the parties, the trial judge determined that the commissions attributable to- Dugas in 1971 were $10,904.06. This figure was reached by deducting from the $12,121.74 total agency commissions the sum of $1217.68, this latter amount representing the total commissions produced by Stern-fels and to which Dugas did not contribute.
We affirm the judgment of the district court.
Initially, it appears from the briefs and argument of counsel that neither party disputes the statement by the trial judge that the parties agreed to attempt a settlement of the litigation along the lines suggested by Rosenthal. Even had this agreement not been reached, however, we think that the testimony of Rosenthal is persuasive as to the proper interpretation of the clause governing the amount to be paid Dugas. As that expert explained, the plaintiff’s position that he should receive one and one-half times the agency’s gross commissions for 1971 would mean that Sternfels would be paying Dugas for some of Sternfels own business, which Rosen-thal rejected as untenable and inconsistent with usual arrangements where entire agencies are purchased. Likewise, the defendant’s contention that Dugas should receive only one and one-half times the gross commissions for 1971 which had been equally divided between the two, as per their agreement on yearly compensation, should also be rejected according to Rosen-thal, as such proposition was also inconsistent with standard practice in buy-out arrangements for such agencies, the normal price being one and one-half times the commissions produced by the seller. We find no error in the acceptance by the trial court of that expert’s interpretation of the pivotal clause at issue here.
Subsequently, the parties agreed as to who should receive credit for all of the agency’s commissions for 1971 with the exception of the Ascension Parish School Board account, which produced a total commission of $1464.67 in that year.
Two issues then arose in connection with that particular commission. The defendant contended that, because the account was lost to another agency the following year, that Dugas should not be paid at all for it *714 under the agreement being litigated. The court rightly concluded, however, that, though lost to the Sternfels Agency, it should be included in the gross amount on which Dugas was paid. As the defendant’s own witness, Rosenthal, testified at page 118 of the transcript:
“Q. Let me rephrase my question then and attempt to clarify for the record. If we have an agreement which was not ambiguous and which provided that A would buy the business of B for U/ times the previous year’s commissions earned, would it go on to normally, a matter of custom, would that agreement go on to exclude lapses, death of people, or loss of the property insured or loss of the public bid, or would it just stay U/2 times the total commissions?
“A. It would be U/2 times the business produced in that calendar or fiscal.
“Q. With no exceptions?
“A. No exceptions. I mean — if from January 1, 1971, to December 31, 1971, you had $100,000.00 school board account and on January 1, you lost the rebid and your agreement is based upon the previous year, that’s the agreement. It’s based on the production of that previous time. That’s — there’s no question on that part of it. I mean this is a definite matter as defined.”
Finally, the court concluded that the School Board commission should not be attributed to either Dugas or Sternfels entirely, but should be divided equally between the parties for the purposes of the gross commission evaluation, as both were instrumental in its production. The record fully supports this conclusion, as the account, by resolution of the School Board, could only be placed with an Ascension Parish resident, which Dugas was and Sternfels was not; yet Dugas had no insurance company with which he could place the School Board business independently and, in that respect, Dugas had to rely on his association with Sternfels for its placement. We find the judgment of the trial court to be correct in all respects and it is affirmed as rendered, at appellants’ costs.
Affirmed.